CRAIG
*vs*
PRATHER.

---

# L. D. Craig *vs* Prather.

CHANCERY.

### APPEAL FROM THE MONTGOMERY CIRCUIT.

Case 3.

*Parol contracts for land. Vendor and vendee.*

JUDGE EWING delivered the Opinion of the Court.

September 13.

ENOCH WILLOUGHBY held two bonds on James Gay, for two parcels of land adjoining, amounting in all to one hundred acres. Willoughby died, having first made his will, by which he devised the tract of land to his wife during her life or widowhood, and upon her marriage or death, to his children. His widow was appointed administratrix with the will annexed, and assigned the bonds of Gay to John Craig, and executed bond with security to him, conditioned to refund $450, the consideration paid, in case the children of Willoughby should ever successfully assert claim to the land. The widow removed to Tennessee and married. Lorenzo D. Craig, the son of John, was let into the possession of the land and the bonds delivered to him, but not assigned, the purchase having been made for him by the father. L. D. Craig sold the land to the complainant below for $1500 and delivered to him, without assignment, the bonds on Gay, and the bond of indemnity executed by the widow, and executed to him a bond, conditioned to refund $1050, in case the children of Willoughby ever evicted him from the land, and delivered to him the possession.

The case stated

Prather filed his bill for a rescission of the contract, enjoining two judgments recovered by L. D. Craig against him for parts of the consideration, charging fraud, and a parol contract for the title, which Craig had failed and refused to comply with. The Circuit Court dissolved

Decree of the Circuit Court.

the contract, and from this decree Craig has appealed to this Court.

The answer admits that the *contract* was for the *sale* and *purchase* of the *land* in contest, and not barely a transfer of *possession,* with a sale of Gay's bonds, such as they were, with Mrs. Willoughby's bond of indemnity. And if so, there is no conveyance or pretence of conveyance of any title to it, nor the transfer, by *writing,* of the bond of Mrs. Willoughby to old Mr. Craig, by which Prather might be enabled to invest himself with the equity, if any, of old Mr. Craig, as the assignee of the bonds on Gay. Those bonds, though assigned by the widow to John Craig, have never been assigned by him, nor by his son, the defendant below, to the complainant, nor is there any *writing* by which the equity of John Craig or his claim to the land, by virtue of his purchase from the widow Willoughby, has passed to the complainants below, nor any writing by which any obligation within the statute of frauds and perjuries, rests on him to transfer or assign his equity to the complainant; nor is there any such writing binding his son, the defendant, to assign, or to *procure* an assignment; and either of them, if called on to assign those bonds, might refuse to do so, and if they did, the complainant could not compel their assignment, nor enforce a transfer of the equity invested in John Craig, by the assignment of them to him, if he chose to rely upon the statute of frauds, &c. Nor could he compel Gay to convey, if, by the assignment to Craig, he might be willing to do so, if Craig thought proper to resist it by taking shelter under the statute; so that if the object of the contract was the sale of the land, and the transfer or passage, even of the claim of John Craig, held under Gay's bonds, the delivery of them without *writing* amounts only to a parol agreement as to the terms of the contract, which cannot be enforced against John Craig or his son, expressed in a form that would be binding on them both without their assent, and which furnishes the complainant with no legal or equitable ground to ask from Gay a conveyance to himself as the legitimate owner of even John Craig's claim, though there were no other objections to his right to do so. And it cannot be believed

that the parties intended less, by the terms of the contract, than to invest the complainant with at least Craig's claim to the bonds, and his equity under them. And the bond of indemnity does not pretend to indemnify the complainant against the claim of John Craig. But if, with respect to the bonds, he contracted merely for their delivery to the complainant, as the means of placing in his hands the evidence of right to the bonds, and not as the evidence of a sale of the land, it is very clear that he promised to procure Gay to make a title to the land, which he has failed to do.

The bill of the complainant specially and *distinctly* charges that the defendant *promised* and agreed to *procure* Gay to make a title, and this promise was not reduced to writing. And the defendant, no where in his answer denies this charge. He says that it is untrue that *he* ever promised to *make* to the complainant any other title than that which he himself held, &c., but does not deny that he *promised* to *procure* Gay to make a title. And in the next sentence, he acknowledges that "he did agree to go with the complainant to James Gay, for the purpose of *leading him in the way in which he might get the title*," but still does not deny that he *promised*, in addition, to *procure* him to make it. This evasion leaves the impression on the mind, that the charge is strictly true, and could not be met by a distinct denial. And one witness, H. Prather, proves that when the contract was made for the land, that the complainant asked the defendant for a bond for the title, and Craig told him "that it was not worth while to be doing so much writing for nothing, that he *would go with him at any time to get the deed made to the land*, and that the men were willing to make it at any time." Besides, it is intrinsically probable that such was the *promise* and *undertaking* of the defendant. For it can scarcely be presumed that the complainant, if he were competent to make a contract at all, could have agreed to give the sound price of $1500 for the naked possession, without title or the means in his hands to obtain a title, or any engagement, or even *promise* on the part of the vendor to *procure* a title to be made to him.

Where a bill for a rescission by vendee distinctly charges a promise by vendor to procure a conveyance from another holding the legal title, which is evasively denied, it will be taken to be true, and if a conveyance is not procured, when demanded, the contract will be rescinded.

A parol promise to convey land, or to procure another to convey, is equally embraced by the statute of frauds and cannot be enforced.

We, therefore, conclude that this promise was made, and that the complainant relying upon it for his title, and the bonds of indemnity of Craig and Mrs. Willoughby, against disturbance from the heirs of her late husband, made the purchase. Without such promise he has no assurance whatever for a title of any kind. This promise was in parol and could not be enforced by reason of the statute of frauds, and the defendant had not procured Gay to make the title, as he had promised, even at the hearing of the cause, and not having done so, it alone presented good and sufficient ground for dissolving the contract.

The Chancellor will not, at the instance of a vendee, dissolve a contract for land merely on the ground that it is parol; provided the vendor, not having been guilty of shuffling, prevarication, or delay, tenders a compliance with its terms before the hearing. If vendor do not comply in such time, the contract should be rescinded.

It is true, that the Chancellor, at the instance of a vendee, as complainant, will not dissolve a contract for land, merely on the ground that it is in parol, or not reduced to writing, provided the vendor, not having been guilty of shuffling, prevarication, or delay, tenders a compliance with its terms before the hearing. But if he fails or refuses to perform, it presents not only good ground to dissolve in Chancery, but good ground to sue and recover back the entire consideration at law, if it had been paid, upon the principle of an entire failure of consideration. For though such contracts are not void, they are not enforcible, and the failure or refusal of the vendor to perform, renders the payment a payment without consideration, and which may be recovered back upon an implied promise to refund.

It is, therefore, the opinion of the Court, that the decree of the Circuit Court be affirmed with costs, &c.

*Apperson* for plaintiff; *Peters* for defendant.